UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22006-Civ-SEITZ
MAGISTRATE JUDGE P.A. WHITE

ANGEL ROBERTO GONZALEZ,            :

    Petitioner,                    :

v.                                 :        REPORT OF
                                            MAGISTRATE JUDGE
MICHAEL D. SCREWS, SECRETARY,
FLORIDA DEP'T OF CORRS.[1]         :

    Respondent.                    :
_____

## I. Introduction

Angel R. Gonzalez ("Gonzalez"), a convicted state felon, an inmate with the Florida Department of Custody,[2] has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §§2241-43. Careful review of Gonzalez's petition reveals that he is essentially challenging the detainer lodged against him by the United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE")[3] and its adverse consequences as a state prisoner arguing a violation of his Due Process rights.

---

    [1]Michael D. Crews has replaced Kenneth S. Tucker as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. Crews should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

    [2]Gonzalez is currently out of department custody by court order.

    [3]INS became the Department of Homeland Security (DHS) which covers three agencies: Immigration and Custom Enforcement (ICE), Customs and Border Patrol (CBP) and the Transportation Security Administration (TSA). Although the detainer at issue was issued while INS was in existence, the DHS component that now administers the detainer is ICE.

This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Proceedings in the United States District Courts.

For its consideration of the petition (DE#1), the Court has the respondent's response to an order to show cause with attached exhibits (DE#10).

## II. Background

Gonzalez is a native and citizen of the country of Cuba, who was paroled into the United States on August 29, 1979. (DE#10,Ex.A).

On May 13, 2005, in Dade County, Florida, Gonzalez was convicted of armed burglary and false imprisonment, for which he was sentenced to life imprisonment as to the armed burglary conviction and five years as to the remaining conviction, to run concurrent with one another.[4]

On May 9, 1996, based on his 1991, 1994 and 1996 convictions, INS served him with a notice notifying him of his exclusion proceedings. (DE#10,Ex.C). Specifically, Gonzalez was notified that he did not appear to be clearly and beyond a doubt entitled to enter the United States as he may have come within the exclusion provisions of Section 212(a)(2)(B) of the Immigration and Nationality Act. (Id.). Accordingly, Gonzalez was detained under the provisions of Section 235(b) of the Immigration and Nationality

---

[4]The Court takes judicial notice of information available at the database maintained by the Miami-Dade County Clerk, http://www.miami-dadeclerk.com/, in State v. Gonzalez, Case No. F04-008753. See Fed.R.Evid. 201.

2

Act, for a hearing before an Immigration Judge to determine whether or not he was entitled to enter the United States or whether he shall be excluded and deported, and where he was required to establish that he was admissible to the United States under all provisions of the United States immigration laws. (Id.).

Prior to the hearing, on May 17, 1996, an INS detainer was lodged against Gonzalez.[5]

Thereafter, on December 17, 1996, an immigration judge ordered Gonzalez excluded and deported from the United States. (DE#10,Ex.D). Although Gonzalez appealed the exclusion order, the Board of Immigration Appeals dismissed the appeal finding that Gonzalez was not eligible for withholding of deportation. (Id.,Ex.E).

However, on August 27, 1999, INS's detainer against Gonzalez was canceled.[6]

Then, on August 2, 2007, ICE lodged an immigration detainer against Gonzalez explaining that an investigation had been initiated to determine whether he is subject to removal from the United States. (DE#10,Ex.F). Moreover, the detainer noted that deportation or removal from the United States had been ordered. (Id.). Likewise, the detainer notified the Florida Department of Corrections that the detainer was for notification purposes only

---

[5]The Court takes judicial notice of information available on the Florida Department of Corrections, Corrections Offender Network, Inmate Population Information Detail, located at www.dc.state.fl.us, viewed on this date, which provides the prisoner's place of confinement and/or release date, along with information regarding his prison sentence history and detainers. See Fed.R.Evid. 201.

[6]See Id.

3

and did not limit the DOC's discretion in any decision affecting the offender's classification, work, and quarters assignment, or other treatment which he would otherwise receive. (Id.). The detainer requested the DOC to detain Gonzalez for a period not to exceed 48 hours to provide adequate time for INS to assume custody of the alien and to notify them in the event of Gonzalez death or transfer to another institution. Id.

Gonzalez has now come to this Court, filing on May 25, 2012, the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, challenging the detainer, alleging it violates his rights to due process. (DE#1).

### III. Discussion

Gonzalez essentially contends that he is being unlawfully restrained by immigration officials while in custody pursuant to state convictions in that the United States has no repatriation agreement with the Republic of Cuba and, therefore, he cannot be returned to Cuba.[7] Gonzalez essentially seeks habeas relief in the

---

[7]It is noted that Gonzalez is correct that, except for exceedingly rare cases, Cuban nationals are not deported or removed from the United States. See, e.g., Clark v. Martinez, 543 U.S. 371 (2005)(noting that the United States government conceded that it is no longer even involved in repatriation negotiations with Cuba for aliens ordered removed from the United States, and ordering that the United States cannot detain Cuban nationals who have been ordered removed for more than six months). See also Garcia-Mir v. Smith, 766 F.2d 1478, 1480 (11th Cir. 1985)("Virtually all of these aliens have been issued final exclusion orders by immigration authorities, but have not been returned because Cuba has been unwilling to take them back."); Fernandez-Roque v. Smith, 734 F.2d 576 (11th Cir. 1984)("After exclusion hearings, the government determined that the majority of the Cubans should be denied entry into the United States and requested Cuba to accept the return of its citizens. So far, the Cuban government has refused to take them back."); Palma v. Verdeyen, 676 F.2d 100, 101-02 (4th Cir. 1982)("In the summer of 1981, the Attorney General announced that the government intended to return to Cuba all excludable aliens still in detention. Cuba refused, however, to take them back. For the purpose of this case, we must assume on the basis of the record that the United States is not presently negotiating with Cuba for the return of any aliens and that Cuba will not soon

form of an order, requiring the removal of the notice of detainer because it is preventing him from participating in various programs offered by the DOC. (DE#1:8).

### A. Challenge to Future ICE Detention

A liberal review of Gonzalez's petition appears to claim that the detainer lodged against him violates the fundamental guarantee of due process as set forth by the Fifth and Fourteenth Amendments to the United States Constitution. He claims that there is no repatriation agreement between the United States and the Republic of Cuba which would legally justify the placement of the detainer. He appears to request an order from this court setting aside the immigration detainer that is lodged against him on that basis.

Gonzalez's challenge to his future ICE detention is not ripe for review. Gonzalez's removal period has not yet begun, and it will not begin until he is released from the DOC. Therefore, the question of whether he will be removable to Cuba is premature.

In order for the court to take jurisdiction over an action, an actual case or controversy must be present. Rizzo v. Goode, 423 U.S. 362, 372 (1976); O'Shea v. Littleton, 414 U.S. 488, 493–95 (1974); Johnson v. Sikes, 730 F.2d 644, 647 (11th Cir. 1984). Some "threatened or actual injury" must exist as a result of the allegedly wrongful actions of the defendant. O'Shea, 414 U.S. 493 (citing Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)). This is because "[t]here must be a personal stake in the outcome such as to assure that concrete adverseness which sharpens the presentation

---

change its policy.").

5

of issues upon which the court so largely depends for illumination of difficult constitutional questions." Id. at 494. "Abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." Id. "[P]rudential considerations" also require the court to abstain from rendering decisions that are premature or abstract or that "anticipate a question of constitutional law in advance of the necessity of deciding it." Sikes, 730 F.2d at 648–49 (quoting Ashwander v. TVA, 297 U.S. 288, 346 (1936)).

Title 8 U.S.C. §1231(a)(1) requires the federal government to attempt to effectuate removal within a 90-day "removal period." See 8 U.S.C. §1231(a)(1). During this removal period, the government must detain the alien. 8 U.S.C. §1231(a)(2). In cases where the alien is confined, the removal period begins the date the alien is released from confinement. See 8 U.S.C. §1231(a)(1)(B)(iii). The government may detain an alien beyond the 90—day removal period only for a length of time reasonably necessary to bring about the alien's actual removal, which is presumptively six months. See Zadvydas v. Davis, 533 U.S. 678, 694–99 (2001).

Once petitioner is released from prison, ICE will have a duty to ensure petitioner is deported, and if he cannot be deported, that he is evaluated for release. See Zadvydas v. Davis, 533 U.S. 678 (2001). At that point, ICE may detain petitioner for a presumptively reasonable time pursuant to Zadvydas, until it determines the conditions under which petitioner must report under supervision once released.

At this juncture, however, Gonzalez's removal period has not

6

yet begun, and it will not begin until he is released from confinement by the DOC in 2032. Therefore, the issue of whether he will be removable to Cuba is not yet ripe for adjudication and must be dismissed. See, e.g., Jean-Henriquez v. Dep't of Homeland Sec., No. 4:05cv304/MMP/WCS, 2006 WL 1687853, at *3 (N.D.Fla. June 15, 2006) (habeas petitioner's claim under Zadvydas was not ripe, because 90-day removal period had not yet begun) (unpublished).

### B. Constitutional Challenge to ICE Detainer

Gonzalez next asserts that his due process rights are being abridged because he is ineligible for participation in various programs within the DOC due to the detainer lodged against him, that claim also warrants no relief. Pursuant to 8 C.F.R. §287.7, a detainer serves to advise another law enforcement agency that ICE seeks physical custody of an alien presently in the custody of that agency for the purposes of arresting and removing that alien. See 8 C.F.R. §287.7(a). The purpose of the detainer is to ensure orderly administration of federal immigration laws and cooperation between local and federal authorities in doing so. See Chiles v. Thornburgh, 865 F.2d 1197, 1211 (11th Cir. 1989). As previously noted, the detainer itself states that it is for notification purposes only and does not limit the State's discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment the prisoner would otherwise receive.

Further, courts have held that changes in custody status, classification levels, or even certain privileges are generally not atypical deprivations which implicate a constitutionally protected liberty interest for due process purposes. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting generally that prison transfers

and changes in classification status do not require due process protections); Murdoch v. Washington, 193 F.3d 510, 513 (7th Cir. 1999)(inmates have no protected liberty interest in attending rehabilitation program); Wishon v. Gammon, 978 F.2 d446, 450 (8th Cir. 1992)(inmates have no constitutional right to educational or vocational opportunities); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989)(inmates have no constitutionally protected liberty interest in study and work-release programs or custody classification); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987)(inmates have no federal right to particular inmate classification or eligibility for rehabilitative programs); Pugliese v. Nelson, 617 F.2d 916, 923 (2d Cir. 1980)(same); Marchesani v. McCune, 531 F.2d 459 (10th Cir. 1976)(inmates have no protected liberty interest in particular custodial classification, even if classification affects eligibility for preferred job assignments, transfers to less restrictive institutions, social furloughs, or early parole); see also, e.g., Borrero v. Wells, No. CV 309-096, 2010 WL 3292696, at *2 (S.D.Ga. May 25, 2010), Report and Recommendation Adopted by 2010 WL 3292694 (N.D.Ga. Apr. 12, 2010) (inmates have no federal constitutional right to participate in rehabilitative programs, including home detention) (unpublished) (citations omitted); Banks v. Ellis, No. 3:09cv425/WS/EMT, 2010 WL 1459742, at *3 (N.D.Fla. Mar. 12, 2010), Report and Recommendation Adopted by 2010 WL 1459770 (N.D.Fla. Apr. 12, 2010)(plaintiff failed to allege facts showing that placement on "heightened security status" imposed significant hardship on him in relation to ordinary incidents of prison life prior to such placement; therefore, he failed to show he had constitutionally protected liberty interest in remaining on former custody status) (unpublished); Powell v. Ellis, No. 3:07cv1 60/MCR/EMT, 2007 WL 2669432, at *4 (N.D.Fla. Sept. 7, 2007)(holding that prisoner had no liberty interest in particular job assignment or custody

classification) (unpublished).

In this case, Gonzalez fails to allege facts showing that the ICE detainer imposes a significant or atypical hardship on him in relation to ordinary incidents of prison life. Therefore, he has failed to show a due process violation. Additionally, a penal institution's use of detainers in deciding prisoners' eligibility for prison programs and early release does not offend equal protection principles. See McLean v. Crabtree, 173 F.3d 1176, 1186 (9th Cir. 1999)(exclusion of prisoners with detainers from community-based treatment programs and sentence reduction eligibility does not offend equal protection); see also, e.g., Borrero, supra. Therefore, petitioner is not entitled to relief on his due process challenge.

## IV. Conclusion

It is therefore recommended that this petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 be denied, and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 4th day of February, 2013.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
UNITED STATES MAGISTRATE JUDGE

9

```
cc:   Angel Roberto Gonzalez, Pro Se
      DC#191716
      Okeechobee Correctional Institution
      Inmate Mail/Parcels
      3420 NE 168th Street
      Okeechobee,FL 34972
      (last known address of record)

      Karin D. Wherry, AUSA
      U.S. Attorney's Office
      99 NE 4th Street
      Miami, Florida 33132
```